## MAYO vs. FREELAND.

The clerk and justices who are required by our election law "to examine and cast up the votes given to each candidate," have no right to go behind the certificates of the judges and clerks of the election—any error in their certificate can only be corrected by the tribunal authorized by law to determine such election when contested.

*Mayo vs. Freeland.*

ERROR to Platte Circuit Court.

STRINGFELLOW, LEONARD & BAY, *for Plaintiff in error, insist:*

1. In an election for clerk, it is the duty of the clerk of the County Court, and not of presiding justice, taking to his assistance two justices of the peace, or of the County Court, to examine, and cast up the votes, determine who is elected, and grant a certificate of the fact. Rev. Statutes, title Elections, § 21 ; title Clerks, § 8.

2. In determining who is elected, the canvassers are not concluded by the abstract of votes furnished by the poll judges, but in the case of a variance between the abstract of the poll book, as to the number of votes given to a candidate, they must be governed by the poll book. Rev. Stat., title Elections, secs. 13, 20 and 21.

3. Although the canvassers ought to examine the votes publicly in the court house, after public notice, by proclamation at the court house door, this fact need not be inserted in their certificate of the result, nor would the omission to give public notice, annul the certificate.

4. It was the duty of the presiding justice of the County Court, to grant the appellant a certificate of his election, upon the certificate of the canvassers, that he had a plurality of the votes given, and it was not competent for him to look behind the canvassers' certificate and determine for himself the result of the election.

WILSON & REES, *for Defendant in error, insist:*

1. That unless the plaintiff moved the court to set aside the judgment and grant a new trial, or in arrest of judgment, this Court will take it for granted, that the said plaintiff acquiesced in the rendition thereof.

2. That the poll books never were legally cast up by the justice. See the reasons given by the court below. Transcript, p. 14. If so, the justice was right in making the certificate the basis of calculation. Elections, sec. 20, 449, R. S. of 1845.

3. A writ of error will not lie in this case. *Mandamus* is the proper remedy, if any, from this Court. See 1 Mo. Rep., 191, Astor vs. Chambers; also Miller & Irvine vs. Richardson, 1 Mo. Rep., 310; these cases decide, that there must be a judgment to authorize an appeal or writ of error, a mere order will not do. See also for this, 1 Bibb, 497; 2 Bacon, 452; Coke, 288; 3 Black.; 109; 2 Pirtle Digest, 79.

4. *Mandamus* will not lie where there is any other remedy. In this case the only remedy was by contesting the election under the provisions of the statute before the County Court. See Rev. Stat., 202, sec. 8.

5. The writ of *mandamus* was not the proper remedy in this case, where the office sought is held under color of right by a third person. *Quo Warranto* is, if any. See People vs. Corporation of N. Y., 3 Johns. cases, 79; King vs. Clark, 1 East., 38; Angel & Ames on Corporations, 565; King vs. Mayor of Colchester, 2 Durn. & East.; see also, St. Louis County Court vs. John Sparks, 10 Mo. Rep., and 8 Pick. Rep., 47.

NAPTON, J., *delivered the opinion of the Court.*

This was a petition for a *mandamus*, upon the defendant in error, who was the presiding justice of the County Court of Platte County, to compel the said justice to give the petitioner a certificate of his election to

the office of Clerk of the County Court. The return to the conditional *mandamus* stated, that by the certificate of the judges and clerks of the election, at the various precincts in Plattte county, the petitioner and one Daniel P. Lewis had each 590 votes, and one Peyton R. Waggoner received 559 votes; that in accordance with these returns, the defendant error, reported the vote to the County Court as a tie, between said petitioner and said Lewis, whereupon the County Court selected said Lewis as their clerk. The justice also admitted, that by casting up the votes, as they appeared on the poll books, said petitioner had 593 and said Lewis 591 votes; but he considered himself unauthorized to go behind the certificates of the judges and clerks of the election. Upon this state of facts the peremptory *mandamus* was refused.

The phraseology of our act concerning elections is not very explicit in relation to the powers of the canvassers, in going behind the certificates of the judges and clerks. The 13th section of the act directs, that the judges and clerks shall take an oath for the faithful performance of their respective duties, and the clerks are required faithfully to record the names of all the voters, and distinctly carry out in lines and columns, the name of the person for whom each voter votes. The 20th section directs the judges and clerks to certify under their hands, the number of votes given to each candidate, and to transmit the same, together with one of the poll books, by one of their clerks, to the clerk of the County Court. The 21st section then authorizes the clerk of the County Court and two justices of the peace, or justices of the County Court, "*to examine and cast up the votes given to each candidate,* and give to those having the highest number of votes, a certificate of election." The only question is, whether this examination and casting up of the votes, here spoken of, is confined to the votes as they are certified by the returns, or whether the canvassers must look into the poll book and review the work of the judges and clerks of the election.

As before observed, the language of this 21st section is not entirely clear, but looking at the scope and spirit of the whole act, we have arrived at the conclusion, that the defendant in error, placed a right construction upon the law.

Whilst it is clear, that the legislature designed that the person having the highest number of votes, should get the certificate of election, we think it is equally manifest, that the judges and clerks of the election, and canvassers were designed to act independently of each other, and that the latter were not entrusted with the power of revising or correcting the acts of the former. In every election, a tribunal has been se-

lected to revise the actions of all the officers concerned, and to correct any mistakes or injustice which have been committed. The canvassers do not constitute that tribunal. They are no more likely to avoid error, than the judges and clerks of the election. On the contrary, when we consider the great number of offices which are elective, and which are filled at the same general election, it is apparent, that the officers who are present at, and superintend the election, are much better qualified to cast up the poll books, than those who may not have been present. The judges and clerks have duplicate poll books; if a mistake be committed in one, the addition of the other will be likely to bring it to their notice. If errors be still committed in both, they can be corrected by bringing the matter before the tribunal appointed by law to decide a contested election. The judges and clerks may then be examined, as well as the poll books; the latter may be wrong and the certificates correct; the voters may be examined, if necessary; and in short, mistakes committed by any of the officers, to whom the conduct of the election is entrusted, may then be corrected. But the legislature do not seem to have intended, that one class of ministerial officers should have the power of revising the action of another class. Each acts independently of the other, and there is good reason why it should be so. Each officer or class of officers is then responsible for his own acts, and not for those whose official action has preceded.

We do not perceive that any inconvenience or injustice is likely to result from this construction of the election law. If the canvassers are allowed to disregard the certificate of the judges and clerks and go into an examination of the poll book transmitted to the clerk, *without* having the other poll book before them, is it not probable that more errors will be committed by them than the officers who were present at the election, and who must be supposed to understand the books made out by themselves? Both classes of officers are liable to commit mistakes. The duty of the canvassers is to cast up the votes as returned by the judges and clerks of each township. The duty of the latter officers, is to keep correct poll books and make correct returns of the votes given in their respective townships. If mistakes be committed by either, there is a remedy. The tribunal appointed by law, to determine contested elections, can correct the errors of the poll books or the returns or the certificates of the canvassers. We do not say that this is the only remedy; but if a mandamus would lie at all, why not let it go against the officers who have committed the errors, rather than against the one who has acted upon the certificates of the others? If the canvassers may correct,

or rather revise the proceedings of the judges and clerks, why may not the presiding justice of the County Court, to whom the canvassers report, be warranted in revising the acts of the canvassers, and in so doing determine in favor of the certificates made by the judges and clerks? It is better policy, in our opinion, and more in conformity to the spirit of our election law, to let each class of officers act independently of the other, with a power in a superintending judicial tribunal, (it will be judicial at least *pro hac vice*,) to correct the errors of all or any of them.

Judgment affirmed.